# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JESUS ROSARIO-TORRES,       :      Civil No. 3:16-cv-1891

         Petitioner     :      (Judge Mariani)

     v.            :

SUPERINTENDENT JAY LANE, *et al.*,  :

      Respondents    :

## MEMORANDUM

Petitioner Jesus Rosario-Torres ("Rosario-Torres"), filed the instant petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction

imposed in the Court of Common Pleas of Pike County, Pennsylvania. (Doc. 1). For the

reasons discussed below, the Court will deny the petition.

## I.    Factual and Procedural Background

The Superior Court, in considering Rosario-Torres' appeal from his judgment of

sentence, adopted the following factual and procedural background set forth in the trial

court's opinion:

> In May of 2007, [Joseph Atwell] was operating a substantial cocaine
> distribution operation out of his home in Forks Township, Northampton
> County. Jesus Rosario-Torres and Norman "Carolina" Domenech were two
> of his associates who aided in this operation. During the early morning hours
> of May 31, 2007, Atwell, Torres and Domenech were at Atwell's house.
> Atwell and Torres told Domenech that the three of them needed to go do a
> job. They drove in Atwell's car to the wooded entrance of the Bear's Den
> Hunting Club in Porter Township, Pike County. Atwell, Torres and Domenech
> exited the vehicle and proceeded on foot some distance away from the road.

Atwell and Torres then shot Domenech multiple times and left him at the scene.

Domenech's body was subsequently discovered by a group of men visiting the Bear's Den Hunting Club. The resulting investigation led police to Atwell, whose home was Domenech's last known address[,] and eventually to Torres. They were both charged with murder in the first degree [and related charges].

The Commonwealth filed appropriate notices of its intent to try Torres and Atwell jointly and its intention to seek the death penalty in both cases. A jury trial was held over seven days beginning on April 29, 2010. The jury convicted both defendants of Murder in the First Degree, Conspiracy to Commit Murder in the First Degree, Kidnapping and Conspiracy to Commit Kidnapping. [Atwell was also convicted of possessing a firearm without a license, persons not to possess a firearm and possession of an instrumentality of crime.]

The penalty phase of the trial occurred over four days. Upon deliberating for several hours, however, the jury was unable to reach a unanimous decision and expressed to the trial court that further deliberations would be unproductive. The trial court determined that the jury was hopelessly deadlocked and imposed a sentence of life imprisonment on both Torres and Atwell for the crime of murder in the first degree. On the remaining charges, Torres received a total aggregate sentence of not less than 30 years nor more than 60 years [and Atwell received a total aggregate sentence of not less than 41 years nor more than 104 years.]

Torres filed a post-sentence motion which the trial court denied. He then filed a timely notice of appeal on August 12, 2010. [Atwell filed a timely notice of appeal on July 22, 2010]. Pursuant to Pa.R.A.P. 1925, Torres [and Atwell each] submitted to the trial court a concise statement of matters complained of on appeal.

(Doc. 9-27, pp. 2-3, *Commonwealth v. Torres*, No 2281 EDA 2010 (Pa. Super. Sept. 13,

2011)). On direct appeal to the Pennsylvania Superior Court, Rosario-Torres sought review

2

of the following issues:

1.  Whether the Trial Court erred by denying Petitioner's motion to sever.

2.  Whether the Trial Court erred by admitting certain evidence seized from Defendant Atwell's residence.

3.  Whether the Trial Court erred in its cautionary jury instructions regarding the evidence seized from Defendant Atwell's residence.

4.  Whether the Trial Court erred in denying Petitioner's motion for a mistrial.

5.  Whether the Trial Court erred in denying Petitioner's Second Omnibus Motion relating to suppression of certain evidence.

6.  Whether the Trial Court erred in granting the Commonwealth's Motion in Limine to preclude cross-examination of Witness Echevarria regarding her past drug use.

7.  Whether the Trial Court erred in precluding cross-examination of Witness Echevarria regarding her prior stay in a mental health facility.

8.  Whether the Trial Court erred in quashing Petitioner's subpoena to obtain medical records of Witness Echevarria.

9.  Whether the Trial Court erred in denying the Petitioner's Motion for Transcripts of certain proceedings.

(Doc. 9-25). On September 13, 2011, the Superior Court affirmed Rosario-Torres' judgment

of sentence. (Doc. 9-27).

Rosario-Torres filed a petition for allowance of appeal to the Pennsylvania

Supreme Court on October 12, 2011. (Doc. 9-28). On February 1, 2012, the Pennsylvania

Supreme Court issued an order denying the petition. (Doc. 9-29). Rosario-Torres did not

3

file a petition for writ of certiorari to the United States Supreme Court.

Rosario-Torres filed a timely petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. C.S. §§ 9541-9546. (Doc. 9-30). Counsel was appointed for Rosario-Torres, who subsequently filed a motion to withdraw as counsel. (Doc. 9-31). The PCRA court granted PCRA counsel's motion to withdraw, and notified Rosario-Torres of the court's intention to dismiss his PCRA petition. (Doc. 9-32). Rosario-Torres then filed an amended PCRA petition, claiming ineffective assistance of counsel at trial. (Doc. 9-33). Specifically, Rosario-Torres claimed that trial counsel advised him not to testify, thereby depriving him of his right to testify and his right to a coherent trial strategy. (*Id.*). Rosario-Torres further averred that the trial court erred by failing to colloquy him to determine whether his waiver of the right to testify was knowing and voluntary. (*Id.*). On March 25, 2013, a hearing was held on the amended PCRA petition. (Doc. 9-34). The PCRA court denied the petition and Rosario-Torres filed a timely appeal to the Pennsylvania Superior Court. (Docs. 9-35, 9-37). On December 4, 2013, the Superior Court affirmed the PCRA court's decision. (Doc. 9-38). Rosario-Torres then filed a petition for allowance of appeal to the Pennsylvania Supreme Court. (Doc. 9-39). The Pennsylvania Supreme Court heard the appeal and ultimately remanded the case back to the PCRA court with the direction to appoint PCRA counsel for a limited evidentiary hearing. (Doc. 9-40). The PCRA court appointed counsel and held an evidentiary hearing on March 3, 2015. (Doc. 9-41). On March 9, 2015,

following the hearing, the PCRA court issued an order denying the amended PCRA petition.

(Doc. 9-42).

Rosario-Torres filed a *pro se* notice of appeal from the March 9, 2015 order. (Doc.

9-43). Counsel for Rosario-Torres subsequently filed a petition to withdraw as counsel, and

an accompanying *Turner/Finley*[1] no-merit brief. (*See* Doc. 9-45, p. 1). On appeal to the

Pennsylvania Superior Court, Rosario-Torres raised the following issues:

1.    Did the PCRA Court abuse its discretion in failing to grant relief on Petitioner's claim that trial counsel was ineffective for giving unreasonable advice not to testify on his own behalf where Petitioner produced evidence that Counsel's advice was based on a hunch that the Commonwealth had not produced enough evidence to sustain a guilty verdict?

2.    Was PCRA Counsel ineffective for failing to present the testimony of Petitioner's daughter at the evidentiary hearing where her testimony would have contradicted trial counsel's statements about the advice he gave Petitioner and his statement that Petitioner admitted guilt to him?

(Doc. 9-43). On May 4, 2016, the Superior Court granted counsel's petition to withdraw and

affirmed the PCRA court's opinion. (Doc. 9-45; *Commonwealth v. Torres*, 2016 WL

2352826 (Pa. Super. May 4, 2016)).

Rosario-Torres then filed the instant petition for federal habeas relief.

## II.    Issues Presented in the Federal Habeas Petition

Rosario-Torres sets forth the following ten grounds for relief in the federal habeas

---

[1]    *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 379 Pa. Super. 390, 550 A.2d 213 (1988) (*en banc*).

petition:

1. Whether the trial court erred in denying the Defendant's written and oral motions to sever his case from that of his co-defendant Joseph Atwell, thus denying the Defendant due process and his right to a fair trial.

2. Whether the trial court erred in admitting into evidence certain items seized at Defendant Atwell's property that bore no connection to Defendant Torres, including various guns not alleged to have been used in the commission of the crimes charged, various types and quantities of drugs, a white supremacist manual, and various items alleged to be related to the drug trade including baggies and owe lists, thus denying the Defendant due process and his right to a fair trial.

3. Whether the trial court erred in its cautionary instructions to the jury related to the items referenced in Question #2 as such instructions were insufficient to cure the prejudice caused by the introduction of said items, thus denying the Defendant due process and his right to a fair trial.

4. Whether the trial court erred in denying the Defendant's motion for a mistrial following the introduction into evidence and vivid display to the jury of various guns, drugs and other items seized at Defendant Atwell's house thus denying the Defendant due process and his right to a fair trial.

5. Whether the trial court erred in denying the Defendant's second (further amended) omnibus motion to suppress statements and evidence specifically related to a cell phone and picture obtained therefrom, which were illegally obtained from the Hispanic, non-English speaking Defendant, where the Defendant signed a Waiver of Rights and Consent to Search Form printed in English and a non-certified translator was used.

6. The trial court erred in granting the Commonwealth's Motion in Limine to preclude cross-examination or use of extrinsic evidence of past drug use from the Commonwealth's key witness, Magaly Echevarria, where

evidence of prolonged drug use was directly related to the witness's ability to recall events about which she was testifying and in [sic] precluded the Defendant from presenting expert testimony related to the effect of past drug use on one's ability to testify and recall events in violation of the confrontation clause of the Pennsylvania and United States Constitutions.

7. Whether the trial court erred in precluding the Defendant from cross-examining the Commonwealth's key witness regarding her recent hospitalization in a mental health facility where the Defendant had information that the witness had lied under oath and stated that she was hospitalized for asthma in violation of the confrontation clause and the compulsory process clause of the Pennsylvania and United States Constitutions.

8. Whether the trial court erred by quashing a subpoena to obtain Magaly Echevarria's mental health records and by denying the defense request for a mental health evaluation to be conducted on Echevarria.

9. Whether the trial court erred in denying the Defendant's motion for transcripts of arguments held with regard to certain issues on appeal, where the legal arguments were held on the record, and the Defendant preserved certain issues for appeal during these arguments.

10. Was trial counsel ineffective for offering unreasonable advice not to testify and in doing so, interfering with the Defendant's right to testify on his own behalf?

(Doc. 1, pp. 3, 8-27).

## III. **Standard of Review**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to §

7

2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his

confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439

(1973). "[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct.

475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based

"on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties

of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

## A.    Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have

been exhausted, or there is an absence of available state corrective process, or

circumstances exist that render such process ineffective to protect the rights of the

applicant. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on

principles of comity in order to ensure that state courts have the initial opportunity to review

federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178,

192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845,

119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).[2] Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard*, 404 U.S. at 275, 92 S.Ct. 509).

## B. Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the

---

[2] In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004). Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in

pertinent part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not

sufficient for the petitioner to show merely that his interpretation of Supreme Court

precedent is more plausible than the state court's; rather, the petitioner must demonstrate

that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*,

171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court

decision to be an unreasonable application of federal law if the decision, "evaluated

objectively and on the merits, resulted in an outcome that cannot reasonably be justified

under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a

state court's findings of fact are correct. A petitioner may only rebut this presumption with

clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322,

341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual

issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual

10

decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir.

2005). This presumption of correctness applies to both explicit and implicit findings of fact.

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner

"must clear a high hurdle before a federal court will set aside any of the state court's factual

findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination

should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational

jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C.

§ 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v.*

*Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316

(1979). "This provision essentially requires the district court to step into the shoes of an

appellate tribunal, examining the record below to ascertain whether sufficient evidence

existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301

F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[3]). Mere

disagreement with an inferential leap or credibility judgment of the state court is insufficient

to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362,

408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding

---

[3] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

11

lacks evidentiary support in the state court record or is plainly controverted by evidence

therein should the federal habeas court overturn a state court's factual determination.

*Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

## IV. Discussion

### A. Ground One

In his first ground for relief, Rosario-Torres asserts that the trial court erred in failing

to sever his trial from that of his co-defendant, Joseph Atwell. (Doc. 1, pp. 3, 8). Rosario-

Torres alleges that there was certain evidence that was admitted at trial, that he contends

would not have been admissible if he was tried alone. (*Id.*). This evidence included

firearms, drugs, drug paraphernalia, and a white supremacist manual, all of which was

discovered in Defendant Atwell's residence. (*Id.*). Defendant Atwell was charged with

crimes relating to the possession of these items, but Rosario-Torres was not. (*Id.*).

"There is a preference in the federal system for joint trials of defendants who are

indicted together" because joint trials "promote efficiency and 'serve the interest of justice by

avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506

U.S. 534, 537 (1993). "Joint trials conserve state funds, diminish inconvenience to

witnesses and public authorities, and avoid delays in bringing those accused of crime to

trial." *United States v. Lane*, 474 U.S. 438, 448 (1986).

"Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder

12

would rise to the level of a constitutional violation only if it results in prejudice so great as to

deny a defendant his Fifth Amendment right to a fair trial." *Lane*, 474 U.S. at 446 n. 8.

Typically, a trial court should grant a severance only if there is a serious risk that a joint trial

would compromise a specific trial right of one of the defendants, or prevent the jury from

making a reliable judgment about guilt or innocence. *Zafiro*, 506 U.S. at 539. The potential

for such a risk may arise when co-defendants assert "mutually antagonistic" defenses.

*United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (citing *Zafiro*, 506 U.S. at 538).

Significantly, mutually antagonistic defenses are not prejudicial *per se*, so as to require

severance. *Zafiro*, 506 U.S. at 538.

     In considering the issue that "both Atwell and Torres claim the trial court erred in

failing to grant motions to sever their trials," the Pennsylvania Superior Court set forth the

following standards:

> "Joinder and severance of separate indictments for trial is a discretionary
> function of the trial court; consequently, the trial court's decision is subject to
> review for abuse of that discretion." *Commonwealth v. Brookins*, 10 A.3d
> 1251, 1255 (Pa. Super. 2010) (citations omitted). An abuse of discretion
> consists not merely of errors in judgment by the trial court, but instead
> contemplates action unsupported by the evidence, at odds with governing
> law, or arising from improper motives personal to the judge. *Id.* The critical
> consideration is whether the appellant suffered prejudice as a result of the
> trial court's decision. *Id.* It is the appellant's burden to establish the
> existence of such prejudice. *Id.*
>
> * * *
>
> Courts should grant separate trials of co-defendants only where the defenses

of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice. [*Commonwealth v. Rainey*, 928 A.2d 215,] 232 [(Pa. 2007).]

(Doc. 9-27, pp. 3-5).

This standard is indistinguishable from the Supreme Court requirement that a defendant demonstrate a serious risk that a joint trial would result in prejudice. It also considers that the potential for such a risk arises when co-defendants assert "mutually antagonistic" defenses. *See Zafiro*, 506 U.S. at 538; *Rainey*, 928 A.2d at 232. It is clear that the law relied on by the state court is in accord with governing United States Supreme Court precedent.

In concluding that Rosario-Torres' claims were meritless, and that he failed to establish prejudice such that severance was warranted, the Superior Court stated as follows:

[Torres] argues severance was appropriate because "certain evidence was presented during the trial that related to . . . Atwell, but that would have been inadmissible in the trial of . . . Torres if tried alone." Brief of Appellant Torres, at 17. Specifically, Torres cites drugs, drug paraphernalia, guns and a white supremacist/ anarchist manual, all of which were seized from Atwell's home. Torres claims this evidence caused a level of prejudice that no instruction could cure." *Id.* at 18. Finally, Torres argues the trial court's refusal to sever caused him additional prejudice because he and Atwell were alleged to have had "varying degrees of culpability." *Id.* at 22. Torres' claims have no merit.

We begin by noting that, although Atwell may have been the "leader" of the drug ring and Torres his "employee," the crimes with which the Commonwealth charged Torres were identical to those lodged against Atwell (first degree murder, kidnapping and conspiracy). Thus, the level of

14

culpability alleged by the Commonwealth was exactly the same with regard to both defendants. We fail to discern, and Torres does not explain, the basis for his claim that he and Atwell were accused of "varying degrees of culpability." *Id.* As such, this argument garners Torres no relief.

Torres next claims he was prejudiced because evidence was presented at trial which would have been inadmissible had he been tried alone. This claim is meritless for several reasons. First, the mere fact that evidence may be admitted at trial against one co-defendant which would not be admissible against another co-defendant does not establish undue prejudice against the latter. "In fact, it is common in joint trials that evidence is admissible against one co-defendant but inadmissible against another." *Commonwealth v. McCrae*, 832 A.2d 1026 (Pa. 2003) (citation and quotations omitted).

Second, Torres has not demonstrated that the evidence in question was, in fact, inadmissible against him. "[T]he question of admissibility depends to a large extent upon the purpose for which the evidence was proffered, as well as a balance of probative value and prejudicial effect." *Commonwealth v. DeJesus*, 880 A.2d 608, 615 (Pa. 2005). Here, the gun evidence was admissible to demonstrate that Torres, who was shown to have had access to Atwell's residence, also had access to the types of firearms used to shoot the victim. *See id.* ("If evidence of possession of, or access to, a weapon other than the murder weapon were proffered for some other relevant purpose, no hard and fast rule could require its exclusion."). Similarly, the drug evidence was admissible against Torres to establish his relationship with Atwell, as well as their motive to commit the killing. *Commonwealth v. Malloy*, 856 A.2d 767, 775-76 (Pa. 2004) (evidence of drug activity of appellant, and that of co-defendants, admissible to demonstrate motive).

(Doc. 9-27, pp. 10-12).

A state court decision is an unreasonable application of Supreme Court precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts" of the case. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). It is clear that the state court reasonably applied the Supreme Court precedent in that it correctly identified the

15

governing legal rules and reasonably applied them to the facts of the case.

To the extent that Rosario-Torres raises a general due process claim based upon the denial of his motion for a severance, this claim is not meritorious. To prevail on a due process claim, Rosario-Torres must prove that he was deprived of "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992)). Rosario-Torres "must tread a steep hill." *Id.* "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Rosario-Torres'] trial must have been fair, it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Upon review of the trial record and the decisions of the state courts, it is clear that Rosario-Torres was not denied due process when the trial court denied his motion for severance. The record clearly indicates that the trial judge had ample discretion as to whether to sever Rosario-Torres' trial from that of his co-defendant, and that the court correctly applied state law and rules of evidence in determining that Rosario-Torres was not prejudiced by the trial court's failure to grant separate trials. Rosario-Torres is not entitled to relief on ground one.

## B.   Ground Two

In ground two, Rosario-Torres alleges that the trial court erred in admitting items

seized at Atwell's residence, namely firearms, a gun case, drugs, drug paraphernalia, and

the white supremacist manual, and the testimony and other evidence related to those items.

(Doc. 1, pp. 3, 10).  On direct appeal, Rosario-Torres challenged the admission of these

items on state evidentiary law.  (Doc. 9-25, pp. 30-37).  However, in his direct appeal brief,

Rosario-Torres makes a sweeping reference to the violation of his right to due process.

(Doc. 9-25, pp. 34, 36, 37).  Out of an abundance of caution, the Court will consider the

merits of this claim.

Generally, the admissibility of evidence is a question of state law which is not

cognizable under habeas review.  *See Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir.

2001) ("A federal habeas court . . . cannot decide whether the evidence in question was

properly allowed under the state law of evidence.").  "[T]he Due Process Clause does not

permit the federal courts to engage in a finely-tuned review of the wisdom of state

evidentiary rules."  *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (citing *Spencer v.*

*Texas*, 385 U.S. 554, 564 (1967)).  The state courts are entitled to deference in their

determinations regarding evidence and procedure.  *See Crane v. Kentucky*, 476 U.S. 683,

690 (1986).  Because habeas relief does not provide an avenue for relief based on alleged

errors of state law, a habeas claim based on a state law evidentiary issue may only be

raised where the petitioner can show that the admission of the evidence in question denied him due process by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn*, 743 F.3d at 407 (quoting *Riggins*, 504 U.S. at 149).

In reviewing the appropriateness of the admissibility of the evidence, the state courts cited to the Pennsylvania Rules of Evidence and applicable state court law. (Doc. 9-24, pp. 7-12; Doc. 9-27, pp. 11-12). The trial court found that all evidence had the permissible and probative effect of linking Rosario-Torres to the murder of Domenech. (Doc. 9-24, pp. 7-12).

The trial court found that the admission of the drugs and drug paraphernalia found at Atwell's house was relevant to show motive for the murder, and that Pennsylvania courts have repeatedly held that evidence demonstrating a defendant was involved in drug trafficking is admissible to show motive for murder. (Doc. 9-24, pp. 7-10). Specifically, the drug evidence established that Rosario-Torres and Domenech both sold drugs for Atwell, that Atwell was angry with Domenech for multiple reasons and, because of this anger, Atwell had a motive to conspire with Rosario-Torres to kill Domenech. (*Id.* at p. 9). The trial court thus found that Rosario-Torres' position within Atwell's drug organization was essential to understanding his motive for committing the murder. (*Id.*). And, the drugs were essential to understanding how these three individuals were connected to each other. (*Id.*). The trial court ultimately concluded that the drug evidence was admissible under PA. R.E.

18

404 (b)(2), and that the probative value of such evidence outweighed its potential for prejudice. (*Id.* at p. 10).

The trial court next found that the firearms and related evidence was relevant and had sufficient probative value. (Doc. 9-24, pp. 10-12). This evidence included Atwell's meticulous care for his guns and owning a specific case for each firearm, two gun cases with missing guns, the active concealment of a pistol after Domenech's murder, the absence of another pistol which correlates to the murder weapon, and evidence that the bullets found in the gun cases were connected to the bullets at the crime scene. (*Id.*). The trial court found that the evidence of the firearms and gun cases demonstrated that Rosario-Torres had access to weapons, including one that was the size, shape, and caliber of the murder weapon. (*Id.* at p. 11). And, evidence of the missing gun indicated circumstantial evidence of Rosario-Torres' acknowledgment of the crime and the need to conceal evidence of the crime. (*Id.*). The trial court ultimately concluded that the firearms evidence had sufficient probative value and was admissible. (*Id.* at p. 12).

With respect to the white supremacist manual, the record reflects that the trial court was never asked to rule on the admissibility of the manual. (*See* Doc. 9-24, p. 15). At trial, the Commonwealth moved for its admission and counsel for both defendants expressly stated that they had no objection. (*See id.*) (citing N.T. 5/7/10, pp. 6-9). Because defense counsel did not object, the trial court allowed the manual's admission into evidence. (*Id.*;

*see also* Doc. 9-14, N.T. Trial 5/7/10, pp. 6-9). The trial court subsequently granted Rosario-Torres' request for a cautionary instruction to the jury with respect to the manual. (Doc. 9-24, pp. 15-16; Doc. 9-14, N.T. Trial 5/7/10, pp. 62-63, 98-99). The trial court provided instructions in an attempt to minimize any potential prejudice, and counsel for Rosario-Torres never objected to the instructions. (*Id.*).

Rosario-Torres argues that the admission of the above-referenced evidence was improper and prejudicial, with minimal probative value. (Doc. 1, p. 10). However, Rosario-Torres fails to demonstrate that the state court's reasoned analysis of the decision to allow these items into evidence resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The Court finds no clear error by the state court in applying state evidentiary rules, and finds that Rosario-Torres has failed to show that the state court's evidentiary rulings deprived him of "fundamental elements of fairness in [his] criminal trial." *Glenn*, 743 F.3d at 407. Therefore, no relief is warranted on this claim.

## C. Ground Three

In ground three, Rosario-Torres asserts that the trial court erred in its cautionary instructions to the jury related to the gun, controlled substances, white supremacist manual, and related evidence, as such instructions were insufficient to cure the prejudice caused by the introduction of these items. (Doc. 1, pp. 3, 13). On direct appeal, Rosario-Torres

20

challenged the propriety of the jury instruction on state evidentiary law. (Doc. 9-25, pp. 38-41). Rosario-Torres did make a passing reference to denial of due process and deprivation of a fair trial in his direct appeal brief. (Doc. 9-25, p. 41). Therefore, the Court will turn to the merits of this claim.

Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding, the only question for the court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 71-72 (quoting *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be viewed in the context of the instructions as a whole and the trial record." *Id.* A trial judge is given much discretion in determining the language of the jury charge. *See United States v. Flores*, 454 F.3d 149, 161 (3d Cir. 2006) (citing *United States v. Goldblatt*, 813 F.2d 619, 623 (3d Cir. 1987)). Further, the Third Circuit Court of Appeals has observed that a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 111 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." *Id.* at

110.

In affirming the judgment of sentence, the Pennsylvania Superior Court addressed

this issue as follows:

> . . . the trial court properly instructed the jury regarding the limited purposes
> for which it was to consider the drug and gun evidence. *See* N.T. Trial,
> 5/6/10, at 121-22; N.T. Trial 5/12/10, at 223-25 (trial court's instructions to jury
> regarding consideration of gun and drug evidence). As the jury is presumed
> to have followed the trial court's instructions in this regard, *see*
> [*Commonwealth v.*] *Smith*, [995 A.2d1143, 1163 (Pa. 2010)], *supra*, the
> instructions were sufficient to cure any undue prejudice which may have
> resulted from the introduction of the gun and drug evidence. As such, and in
> light of the record as a whole, the trial court's refusal to sever Torres' trial
> from that of Atwell was a proper exercise of the court's discretion.

(Doc. 9-27, p. 12).

Rosario-Torres has not demonstrated that the jury misapplied the trial court's

instructions in a way that violates the Constitution. The trial court gave extensive

instructions to the jury regarding the drug, gun, and related evidence. (*See* Doc. 9-14, N.T.

Trial 5/7/10, pp. 62-63, 98-99; Doc. 9-17, N.T. Trial 5/12/10, pp. 223-25). The trial court

clearly delineated the limited purposes for which the jury could consider the drug, gun, and

related evidence, and specifically directed the panel not to use the evidence as proof of

either defendant's guilt on the underlying charges. These instructions, which the jury is

presumed to have followed, *see Commonwealth v. Smith*, 995 A.2d1143, 1163 (Pa. 2010),

were sufficient to cure any potential undue prejudice which may have resulted from the

introduction of such evidence. (Doc. 9-27, p. 12). The state courts' decisions are not

22

contrary to, or an unreasonable application of, constitutional law, nor are they an unreasonable determination of the facts in light of the evidence presented. Rosario-Torres has failed to show that he was deprived of "fundamental elements of fairness in [his] criminal trial" based on this claimed error. *Glenn*, 743 F.3d at 407. Thus, he is not entitled to relief on this claim.

## D.    Ground Four

In ground four, Rosario-Torres argues that the trial court erred in denying his request for a mistrial. (Doc. 1, pp. 3, 16). After the evidence of the firearms, drugs, and related items were presented to the jury, the trial court gave a limiting instruction regarding the evidence, and denied defense counsel's oral request for a mistrial. On direct appeal, Rosario-Torres challenged the trial court's decision on state law grounds, with a passing reference to denial of due process and deprivation of a fair trial. (Doc. 9-25, pp. 42-43). Assuming that Rosario-Torres' use of the terms "due process" and "fair trial" implicate the federal Constitution, the Court will turn to the merits of this claim.

The trial court, in its Rule 1925(a) opinion on direct appeal, explained that the drug and gun evidence were admissible, had sufficient probative value, denied Rosario-Torres' motion to prohibit their admission, and denied his request for a mistrial. (Doc. 9-24, pp. 10-15). The trial court found as follows:

Despite its admissibility, the drug and gun evidence certainly had potential to cause undue prejudice if the jury considered it in making general conclusions

23

about Torres' character and his propensity to commit the charged offenses. Such consideration would clearly exceed the limited purposes for which the evidence was admitted. In light of the limiting instruction given to the jury, however, the trial court concluded that the potential for such prejudice did not warrant granting Torres' motion for a mistrial.

"A trial court may grant a mistrial only 'where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.'" *Commonwealth v. Wright*, 599 Pa. 270, 309, 961 A.2d 119, 142 (2008) quoting *Commonwealth v. Simpson*, 562 Pa. 255, 754 A.2d 1264, 1272 (2000). In this instance, the trial court gave a cautionary instruction to the jury limiting their consideration of the drug and gun evidence. "The jury is assumed to have followed the cautionary instruction given." *Commonwealth v. Watkins*, 577 Pa. 194, 216, 843 A.2d 1203, 1216 (2003). Such instruction, moreover, is presumed to be sufficient to cure any prejudice." *Id*[.]; *see also* PA. R.E. 105. Accordingly, the drug and gun evidence did not have the unavoidable effect of depriving the defendant of a fair trial and the trial court therefore denied his motion for a mistrial.

(Doc. 9-24, pp. 14-15) (footnote omitted). On appeal, the Pennsylvania Superior Court affirmed the trial court's decision and adopted the reasoning of the trial court judge. (Doc. 9-27, pp. 12-13). The trial court determined that the evidence in question was actually admissible, and provided curative instructions with respect to the evidence. For the reasons stated above, the jury is presumed to have followed the instructions, and the circumstances do not suggest that the jury would have had particular difficulty in following them. The trial court ultimately found that Rosario-Torres failed to establish any undue prejudice and denied his request for a mistrial. It is clear that the state court correctly identified the applicable state law and state evidentiary rules and reasonably applied them to the facts of

24

the case. Rosario-Torres has not established that the evidence was so inflammatory as to prevent a fair trial. Thus, Rosario-Torres is not entitled to relief on this ground.

### E.    Ground Five

In ground five, Rosario-Torres asserts that the trial court erred in denying his second amended omnibus motion to suppress statements and evidence related to a cell phone and picture on the cell phone, which he claims were illegally obtained from him because he signed a Waiver of Rights and Consent to Search Form printed in English, he only speaks Spanish, and a non-certified translator was used during the interview. (Doc. 1, pp. 3, 18).

#### 1.    *Waiver of Miranda*

The Fifth Amendment of the United States Constitution protects an individual from self-incrimination. U.S. CONST. amend. V. The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination to the states. *See Malloy v. Hogan*, 378 U.S. 1, 8 (1964). The prosecution may not use any statements stemming from a custodial interrogation unless the individual is first informed of his right to remain silent, that any statement made may be used as evidence against him, and that he has a right to an attorney. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). An individual may waive these, provided the waiver is made voluntarily, knowingly, and intelligently. *Id.* Absent a voluntary waiver of these rights, a confession taken during a custodial interrogation violates the privilege against self-incrimination. *See Thompson v.*

*Keohane*, 516 U.S. 99 (1995).

Rosario-Torres alleges that because he is Spanish-speaking and does not understand the English language, the State Police officers should have provided a certified translator when they spoke to him. He essentially argues that this amounted to a violation of *Miranda* and a violation of search and seizure. When evaluating whether the waiver of *Miranda*'s protections was voluntary, the Court must consider two elements. First, a suspect's waiver must be voluntary in the sense that it is the "product of an essentially free and unconstrained choice by its maker." *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994). Second, the waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 371 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). To determine if a confession was voluntary and whether a party knowingly waived his rights, the Supreme Court requires consideration of "the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citations omitted).

The Supreme Court has held that a statement or confession is involuntary when the suspect's "will was overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). However, a lack of evidence regarding an officer's use of coercive tactics similarly impacts a voluntariness analysis. *See*

26

*United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005) ("A necessary predicate to a finding of involuntariness is coercive police activity.").

"The ultimate issue of voluntariness is a legal question requiring an independent federal determination." *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) ("[U]nder the AEDPA habeas standard, we are required to determine whether the state court's legal determination of voluntariness was contrary to or an unreasonable application of Supreme Court precedent.") (citing *Miller v. Fenton*, 474 U.S. 104, 110 (1985)). Determinations of factual issues by state courts, such as whether police used intimidation tactics, are given a presumption of correctness, which may be rebutted by clear and convincing evidence to the contrary. *See Miller*, 474 U.S. at 112 (a state court's findings on subsidiary questions in determining voluntariness of a confession are conclusive on habeas review absent clear and convincing evidence to the contrary); *see also Sweet v. Tennis*, 386 F. App'x 342, 345 (3d Cir. 2010). Thus, the Court must examine the facts surrounding Rosario-Torres' police interview in order to determine if the state court's holding was contrary to, or an unreasonable application of, clearly established federal law.

Rosario-Torres raised this issue during pretrial proceedings and, following a hearing, the trial court denied the suppression motion, citing federal case law. On appeal, the Pennsylvania Superior Court adopted the reasoning of the trial court. In addressing this claim, the trial court found as follows:

27

During trial, the Commonwealth presented the testimony of Pennsylvania State Police Trooper Paul Cavallero. Trooper Cavallero testified that, on June 10, 2007, he conducted an interview with Torres at the State Police barracks in Harrisburg. See N.T. 5/4/10 at 205. That interview was conducted with Corporal Daniel Gonzalez acting as a Spanish interpreter between Torres, who speaks only Spanish, and Trooper Cavallero. After executing a written waiver of his Miranda rights, Torres indicated that he was at the Atwell residence in Northampton County the day after he and Domenech were at the Atwell residence on May 29, 2007, after he and Domenech were subjected to a traffic stop on that date. Torres further indicated that he left the Atwell residence for Harrisburg on May 30, 2007, prior to when the murder occurred. See N.T. 5/4/10, at 212-214. During the interview, however, Torres consented to a search of his cell phone, which revealed a photograph placing him in Northampton County after May 30, 2007. See N.T. 5/4/10, at 212-214.

Prior to trial, Torres filed an omnibus motion seeking to suppress both his statements during the June 10, 2007 interview with Trooper Cavallero and the photograph recovered from his cell phone. See Second Further Amended Omnibus Pretrial Motion (March 15, 2010). He argued that he did not understand the Miranda warnings read to him during the interview because Corporal Gonzalez was not a competent translator. Similarly, he argued that his consent to search his cell phone was invalid because Corporal Gonzalez was not a competent translator. Following a hearing, the trial court denied Torres' motion. See Trial Court Order, 5/4/10. Torres now argues on appeal that this was an error on the part of the trial court.

With respect to Torres' Miranda waiver, the trial court notes the well-established principles established by the United States Supreme Court:

> Echoing the standard first articulated in Johnson v. Zerbst, 304 U.S. 458, 464 (1938), Miranda holds that the defendant may waive effectuation of the rights conveyed in the warnings provided the waiver is made voluntarily, knowingly and intelligently. The inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the

waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (U.S. 1986) (internal citations omitted). Furthermore, it is the Commonwealth's burden to prove by a preponderance of the evidence that a Miranda waiver was valid.

At the hearing held on Torres' motion, the Commonwealth presented the testimony of both Trooper Cavallero and Corporal Gonzalez. They testified that Torres was provided Miranda warnings in Spanish in both oral and written form. Torres said he understood those warnings and ultimately signed a written waiver of his rights. *See* Commonwealth Exhibit 1 (3/29/10). Based on their testimony, the trial court concluded that the Commonwealth sufficiently proved that Torres[] voluntarily, knowingly, and intelligently waived his Miranda rights.

To the extent Torres claimed his waiver was ineffective because Corporal Gonzalez was not a competent interpreter, the trial court found this argument lacked merit. The Tenth Circuit Court of Appeals has previously addressed this issue and provided the following analysis:

Although language barriers may inhibit a suspect's ability to knowingly and intelligently waive his Miranda rights, when a defendant is advised of his rights in his native tongue and claims to understand such rights, a valid waiver may be effectuated. The translation of a suspect's Miranda rights need not be a perfect one, so long as the defendant understands that he does not need to speak to police and that any statement he makes may be used against him.

*United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990); *see also United States v. Boon San Chong*, 829 F.2d 1572 (9th Cir. 1987); *United States v. Martinez*, 588 F.2d 1227 (9th Cir. 1978). This is consistent with the

United States Supreme Court's holdings that "the rigidity of Miranda does not extend to the precise formulation of the warnings given a criminal defendant, and no talismanic incantation is required to satisfy its strictures." *Duckworth v. Eagan*, 492 U.S. 195, 202, 109 S.Ct. 2875, 2880 (1989) (internal citations omitted). "The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by Miranda." *Id.* at 203.

In this instance, Corporal Gonzalez testified at the omnibus hearing that he was raised in a Spanish speaking family, that he speaks fluent Spanish, and that he understands some written Spanish. In addition, he testified that he was able to understand Torres during the interview and that Torres did not appear to have any problem understanding and responding to him appropriately. Based on this testimony, the trial court concluded that Corporal Gonzalez was a competent interpreter and sufficiently informed Torres of his rights prior to executing the waiver.

Likewise, with respect to the search of Torres' phone, the trial court concluded that Trooper Caval[l]er[]o obtained Torres['] valid consent.

> It is the Commonwealth's burden to prove that a defendant consented to a warrantless search. To establish a voluntary consensual search, the Commonwealth must prove that a consent is the product of an essentially free and unconstrained choice -- not the result of duress or coercion, express or implied, or a will overborne -- under the totality of the circumstances.

*Commonwealth v. Acosta*, 815 A.2d 1078, 1083 (Pa. Super. 2003).

Here, Corporal Gonzalez testified that Torres signed a written consent form prior to his phone being searched by police. *See* Commonwealth Exhibit 2 (March 29, 2010). While that consent form was written in English, Corporal Gonzalez testified that he verbally translated the form for Torres, and that Torres appeared to understand this explanation. In addition, Trooper Caval[l]ero testified that no threats were made to get Torres to sign the written consent. Accordingly, based on the totality of the circumstances, the trial court concluded that Torres['] consent was the product of an essentially free and unconstrained choice.

30

For the above stated reasons the trial court denied Torres' motion to suppress the statements and photographs obtained during the June 10, 2007 interview. For identical reasons, his arguments on appeal lack merit.

(Doc. 9-24, pp. 16-20).

The Court has considered the facts in support of Rosario-Torres' claim that his confession was invalid, and finds that he has not established that the state court conclusion resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Nor has he established that the proceedings resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The facts show that Rosario-Torres' treatment during the interrogation was reasonable, did not present an intimidating or coercive environment, and was not unduly lengthy. *See Jacobs*, 431 F.3d at 108. Nothing in the record suggests that Rosario-Torres' statements were not voluntary. Rosario-Torres entered the Pennsylvania State Police Barracks on his own. (Doc. 9-6, N.T. Suppression Hearing 3/29/2010, pp. 54-56). The State Police officers did not pick him up and did not transport him to the barracks. (*Id.*). Sergeant Cavallaro questioned Rosario-Torres in an interview room. (*Id.* at pp. 58-59). Corporal Gonzalez aided in the questioning by translating to Spanish. (*Id.*). Rosario-Torres was never handcuffed and never told that he could not leave. (*Id.*). He was read his *Miranda* rights and warnings in Spanish, and the Rights and Warnings Waiver Form was provided to him in Spanish. (*Id.* at pp. 11-12).

31

Rosario-Torres indicated that he understood the *Miranda* warnings and signed the Waiver Form, which was in Spanish. (*Id.*). At the end of the interview, State Police officers drove Rosario-Torres home because he did not have a ride.

Rosario-Torres asserts that the *Miranda* warnings were invalid based on the failure to use a certified translator. (Doc. 1, p. 18). However, the record reflects that Rosario-Torres was warned of his *Miranda* rights both orally and in writing, in Spanish, and he signed a written acknowledgment and waiver of those rights, on a Spanish form. The record further reflects that Corporal Gonzalez asked Rosario-Torres several times throughout the interview if he had any difficulty understanding or communicating with Corporal Gonzales, and Rosario-Torres never stated that he had any trouble. (Doc. 9-6, p. 10, N.T. Suppression Hearing 3/29/2010). Additionally, there is no evidence to suggest that Rosario-Torres was physically harmed or threatened, there is no testimony that he was deprived of food, water, or other physical needs, and there is no indication that the police used unnecessary or overbearing psychological tactics to obtain an incriminating statement from him. Indeed, Rosario-Torres does not allege that the environment was intimidating. Additionally, there is no evidence that Rosario-Torres was under the influence of drugs or alcohol such that he did not comprehend his *Miranda* rights. Rosario-Torres has not provided clear and convincing evidence that his "will was overborne in such a way as to render his confession the product of coercion." *Fulminante*, 499 U.S. at 288. For these

reasons, the Court will deny the habeas petition as to this claim.

### 2. **Consent to Search Cell Phone**

Rosario-Torres next asserts that his Fourth Amendment rights were violated because he did not knowingly and voluntarily consent to the search of his cell phone. (Doc. 1, p. 18).

In *Stone v. Powell*, the United States Supreme Court held that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465 (1976). The Third Circuit Court of Appeals stated, "[u]nder *Stone v. Powell*, a federal court may not reexamine the state court's determination that no Fourth Amendment violation occurred, that a violation had occurred but that introduction of its fruits was harmless, or that any Fourth Amendment violation that might have occurred had harmless results." *Gilmore v. Macks*, 799 F.2d 51, 56 (3d Cir. 1986) (citing *Stone*, 428 U.S. 465).

In the instant matter, Rosario-Torres raised this Fourth Amendment claim in state court. Rosario-Torres filed a pretrial motion wherein he sought suppression of the evidence in question. On March 29, 2010, a suppression hearing was held and Corporal Gonzalez, the officer who translated between Rosario-Torres and Corporal Cavallaro, testified as

33

follows:

Q: Now during your translation between Mr. Torres and Corporal Cavallaro, did you have any problems understanding Mr. Torres?

A: No.

Q: Did he indicate that he was having any problems understanding you?

A: No.

Q: Did he seem to respond to your questions appropriately, like he understood them?

A: Yes.

Q: Corporal I show you what has been marked as Commonwealth's Exhibit No. 2, could you look at that please? Do you recognize what that document is a copy of?

A: Yes I do.

Q: What is that document a copy of?

A: It is a Waiver of Rights and Consent to Search. And the specific item was the Defendant's cell phone.

Q: And did you read this form to the Defendant in the Spanish language?

A: Not in the Spanish language. I interpreted into Spanish what is written here in English.

Q: And, I guess that was my question. This form is in English, is that correct?

A: Correct.

Q: And you interpreted the English word into Spanish?

34

A:   Yes.

Q:   For Mr. Torres?

A :   Yes.

Q:   As it is on this form?

A:   Yes sir.

Q:   Did Mr. Torres appear to understand what you were asking him?

A.   Yes.

Q:   And after that, did he give consent for the Pennsylvania State Police to take his cell phone that he had on him?

A:   Yes he did.

Q:   Did Mr. Torres appear to have any problem understanding your translation of this into Spanish?

A:   No, it was—and I repeated it and we made very clear that he understood.

Q:   And did Mr. Torres sign this document in several places?

A:   Yes.

Q:   Specifically he signed it indicating he was giving the Pennsylvania State Police consent to [search] the cell phone that he had on him; is that right?

A:   Yes sir.

Q:   Now when interpreting this consent form to Mr. Torres, either before, during, or after the interpretation of this did you threaten Mr. Torres in any way in order to have him sign this?

A: No.

Q: Was anybody else there in your presence at the time that you heard them threaten Mr. Torres with regard to him signing this document?

A: No.

Q: And the same goes for the previous document, Commonwealth's Exhibit No. 1, did you make any threats to Mr. Torres in order to get him to waive his Miranda Rights?

A: No.

Q: And did you hear anybody else make any threats to Mr. Torres?

A. No.

Q: Now at some point after this Consent to Search Form is signed, there is a member of the Pennsylvania State Police actually then take Mr. Torres' cell phone?

A: Yes.

Q: But is was only after this was signed, correct?

A: Absolutely.

Q: Throughout this entire time that you were with Mr. Torres, did you ever have any problems understanding him speaking in Spanish?

A: No sir.

Q: And did he ever indicate to you that he was having any problem understanding you speaking the Spanish language to him?

A: No sir and I made sure that I asked him several times during just to make sure that we were clear on our communication and he was okay.

Q:    And you said he responded appropriately to your questions; not like he
      didn't understand what the question was, is that correct?

A:    That is correct.

(Doc. 9-6, pp. 14-18, N.T. Suppression Hearing 3/29/10, 14:2-18:3). The trial court denied

the suppression motion, and found that Rosario-Torres effectively communicated with the

police officers, indicated that he understood the consent form, and waived his rights as it

related to a search, before turning over his cell phone to the police. (Doc. 9-7). The trial

court further found that there was no evidence presented to indicate that the translation of

the Miranda warnings or consent were inadequate or erroneous. (Id. at p. 2). After the trial

court issued its opinion denying the suppression motion, Rosario-Torres then raised his

Fourth Amendment claim on direct appeal. (Doc. 9-25, pp. 15-16, 44-47). On September

13, 2011, the Pennsylvania Superior Court affirmed the trial court opinion. (Doc. 9-27). The

Pennsylvania Supreme Court denied Rosario-Torres' petition for allowance of appeal.

        The Fourth Amendment claim presented by Rosario-Torres in the instant petition

relates to the suppression issues in the underlying criminal case. It is clear that Rosario-

Torres was previously afforded a full and fair hearing on his Fourth Amendment claim,

having raised this issue with the Pike County Court of Common Pleas, subsequently

appealing this issue to the Superior Court, which affirmed the trial court, and having his

request to appeal to the Supreme Court of Pennsylvania denied. Consequently, because

Rosario-Torres was afforded "full and fair litigation" of his Fourth Amendment claim in state court, this Court is precluded from considering the merits of this Fourth Amendment claim raised in the instant federal habeas petition. *Stone*, 428 U.S. at 494.

### F. Grounds Six, Seven, and Eight[4]

In grounds six, seven, and eight, Rosario-Torres raises several issues regarding one of the Commonwealth's key witnesses, Megaly Echevarria. (Doc. 1, pp. 20-24). The Court finds that Rosario-Torres has not identified any state court decision which is contrary to, or an unreasonable application of, constitutional law, other than making the same claims he made in state court.

The right to cross-examine witnesses and present evidence is a basic right guaranteed by the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV. "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense–a right to his day in court–are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." *Pointer v. Texas*, 380 U.S. 400, 405 (1965) (citation omitted).

Furthermore, the Sixth Amendment's Confrontation Clause guarantees that, "[i]n all

---

[4] Respondents argue that grounds six, seven, and eight were presented to the state courts as claims of trial court error under state law, not as a federal violations and, as such, were waived under state law and procedurally defaulted in this forum. (Doc. 9, pp. 28-31). The Court finds that these claims were fairly presented to the state courts and are subject to review on the merits. (*See* Doc. 9-25, pp. 48-62).

criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original)); *see also United States v. Lore*, 430 F.3d 190 (3d Cir. 2005). It is well-settled that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

The United States Court of Appeals for the Third Circuit recognizes a two-part test to determine if a violation of the Confrontation Clause has occurred. *See United States v. Noel*, 905 F.3d 267, 268 (3d Cir. 2018) (citing *United States v. Chandler*, 326 F.3d 210, 219 (3d Cir. 2003)). First, the court must determine whether the evidentiary ruling at trial "significantly inhibited [the defendant's] effective exercise of [his] right to inquire into [the] witness's 'motivation in testifying.'" *Chandler*, 326 F.3d at 219. Second, "if the District Court's ruling did significantly inhibit [the defendant's] exercise of that right, whether the constraints it imposed on the scope of [the defendant's] cross-examination fell within those

'reasonable limits' which a trial court, in due exercise of its discretion, has authority to establish." *Id.*

### 1. *Ground Six*

In ground six, Rosario-Torres claims that his due process and Sixth Amendment confrontation rights were violated when the trial court precluded cross-examination or use of extrinsic evidence of Echevarria's past drug use, and precluded the defense from presenting expert testimony related to the effect of past drug use on the ability to testify and recall events. (Doc. 1, p. 20).

In consideration of the issues raised in ground six, the trial court applied the appropriate state law standards for cross-examination testimony. (*See* Doc. 9-24, pp. 21-23). With respect to Echevarria's past drug use, the trial court, relying on Pennsylvania state law, granted in part and denied in part the Commonwealth's request with respect to this line of questioning. (*Id.*). The trial court ordered that "[e]vidence of past drug use unrelated to Ms. Echevarria's ability to recall or which did not occur at the time of an occurrence to which she is testifying is precluded." (*Id.* at pp. 21-22, citing Trial Court Order, 4/27/10). Thus, Rosario-Torres was permitted to question Echevarria about her drug use at the time of the murder when she acted as a translator between Rosario-Torres and his co-defendant. (*Id.*). However, he was precluded from questioning Echevarria about her drug use beyond that relevant time period. (*Id.*).

Rosario-Torres also argues that the trial court erred in barring him from introducing expert testimony and other extrinsic evidence regarding Echevarria's past drug use at times other than those which were the subject of her testimony. (Doc. 1, p. 20). The trial court concluded that such evidence was inadmissible for the same reason cross-examination of Echevarria herself would have been impermissible. (Doc. 9-24, pp. 22-23).

It is clear that the trial court reasonably determined that this testimony and evidence related to Echevarria's past drug use would not have been admissible or relevant. The state court's decision is not contrary to, or an unreasonable application of, relevant constitutional law, nor is it an unreasonable determination of the facts in light of the evidence presented. Therefore, Rosario-Torres is not entitled to habeas relief on this claim.

### 2. *Ground Seven*

In ground seven, Rosario-Torres claims that his due process and Sixth Amendment confrontation rights were violated when the trial court precluded cross-examination of Echevarria regarding her recent hospitalization in a mental health facility.[5] (Doc. 1, pp. 21-22). In setting boundaries with regard to this line of questioning, the trial court relied on

---

[5]    Rosario-Torres also claims that the trial court's rulings violated the Compulsory Process Clause of the Sixth Amendment. (Doc. 1, p. 21). The Court need not address this claim because "[t]here is apparently little, if any, difference" between the scope of the Compulsory Process and Due Process Clauses. *Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 445 n. 4 (3d Cir. 1992); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (stating that the compulsory process clause "provides no *greater* protections . . . than those afforded by due process . . .") (emphasis in original); *Cikora v. Dugger*, 840 F.2d 893, 897 n. 4 (11th Cir.1988) ("[W]e believe that the standards for assessing the sixth amendment violation and a violation of due process itself are in context-a challenge to a trial court ruling excluding evidence or testimony.").

Pennsylvania state law governing appropriate cross-examination testimony. (Doc. 9-24, pp. 27-30). The trial court limited cross-examination regarding Echevarria's hospitalization for a purported suicidal ideation, and found as follows:

> [T]he trial court was presented with a witness who potentially suffered from suicidal ideations. There was no basis to conclude that such condition would have impacted Echevarria's ability to accurately observe and report the events which were the subject of her testimony. Accordingly, the trial court concluded that such evidence was inadmissible and therefore granted the Commonwealth's request. See Trial Court Order, 4/27/10.
>
> To the extent Torres sought to present evidence regarding a hospitalization unrelated to the specific issue of Echevarria's suicidal ideations, the trial court's ruling had no bearing on his ability to do so. This was expressly explained to counsel on the record during trial in a sidebar conference:
>
> > THE COURT: This is for purposes of the record. During lunch time I had an opportunity to meet with counsel regarding requests for clarification of prior Court Orders regarding Motions In Limine and the Admissibility of Evidence. For purposes of these proceedings, prior Orders have been entered as it relates to each of these issues.
> >
> > ***
> >
> > [T]he other issue was the admissibility of [Echevarria's] mental health. You can ask questions regarding the issues of mental health that would go to her ability to remember, to observe and recall. But in terms of things like depression, you know being suicidal that is not admissible. It doesn't go to ability to recall. It doesn't go to credibility either. It does with mental health.
> >
> > ATTORNEY TONKIN: As I understand it your Honor, then, basically the questions of what you're permitting is, were you hospitalized for something and does that affect your ability to remember or recall today?

THE COURT: Not Recall today, recall at any time.

ATTORNEY TONKIN: Well, yeah. Recall the events of this that had intervened.

THE COURT: Yes.

ATTORNEY TONKIN: Okay.

N.T. 5/3/10, at 113-117.

Ultimately, defense counsel did cross-examine Echevarria regarding her recent hospitalizations. Echevarria admitted to being hospitalized on more than one occasion prior to trial, but stated that such hospitalizations were for asthma-related problems. N.T. 5/3/10, at 140-41. Accordingly, the issue of her hospitalizations was explored to the fullest extent allowable by law, and Torres' argument on appeal lacks merit.

(Doc. 9-24, pp. 29-30).

Having reviewed the trial record and state court decision, it is plain that the state court's decision is not contrary to, or an unreasonable application of, constitutional law, nor is it an unreasonable determination of the facts in light of the evidence presented. Rosario-Torres is not entitled to habeas relief on this claim.

### 3. *Ground Eight*

In ground eight, Rosario-Torres claims that the trial court erred in quashing defense counsel's subpoena to obtain Echevarria's mental health records and denying the defense's request for a mental health evaluation to be conducted on Echevarria. (Doc. 1, pp. 23-24).

The trial court denied the request to subpoena Echevarria's medical records, and concluded

that the hospital was legally prohibited from producing any records or any witnesses to

testify with respect to Echevarria's treatment. (Doc. 9-24, pp. 23-25). In reaching its

conclusion, the trial court relied on Pennsylvania state law and the protection of the

patient-psychiatrist privilege. (Id.).

The trial court further concluded that there was no basis to compel Echevarria to

participate in an involuntary psychological evaluation. (Doc. 9-24, pp. 25-27). The trial

court noted that, at the time of the request, the court had not yet observed Echevarria

testify, which, pursuant to Pennsylvania law, compelled the court to deny Rosario-Torres'

request for a psychological evaluation. (Id.). The trial court further noted that even if it

could have engaged in a competency investigation, there was simply no evidence in the

record to warranting a psychological evaluation of Echevarria. (Id.).

Upon consideration of the record, the Court does not find that the state court's

findings were contrary to clearly established Constitutional law or were an unreasonable

application of the facts in light of the evidence presented. The Court will deny ground eight.

### G.    Ground Nine

Rosario-Torres next alleges that the trial court erred by denying his motion for

transcripts of certain oral arguments that took place prior to trial. (Doc. 1, p. 25). The

Superior Court, in affirming Rosario-Torres' judgment of sentence, addressed this issue as

44

follows:

> We note that Torres raises an issue regarding the trial court's denial of a motion for transcripts pertaining to oral arguments held by the trial court. This issue was not raised in Torres' Pa.R.A.P. 1925(b) statement and, as a result, was not addressed by the trial court in its Rule 1925(a) opinion. Any issues not raised in a Rule1925(b) statement will be deemed waived on appeal. *Commonwealth v. Lord*, 719A.2d306 (Pa. 1998). This issue is, accordingly, waived.

(Doc. 9-37, p. 12, n. 3).

To properly exhaust his state remedies, Rosario-Torres was required to fairly present his claims to the state court, either on direct appeal or by collateral review. *See Castille v. Peoples*, 489 U.S. 346, 349-50 (1989); *Blasi v. Attorney General of Pa.*, 30 F. Supp. 2d 481, 487 (M.D. Pa. 1998). The record is clear that Rosario-Torres waived ground nine under state law. This claim is thereby defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) (concluding, "if the final state court presented with a federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed"). Rosario-Torres' failure to timely and properly pursue this claim at the state level constitutes an independent and adequate state ground sufficient to support a procedural default of the claim. *See Barnhart v. Kyler*, 318 F. Supp.2d 250 (M.D. Pa. 2004). Rosario-Torres is not entitled to federal habeas review of this claim unless he can meet his burden of establishing "cause for the default and actual prejudice as a

45

result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015). Rosario-Torres fails to acknowledge his procedural default of this claim, and fails to allege any cause and prejudice to excuse it. (*See* Doc.1; Doc. 10, p. 38); *see also Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that the petitioner's failure to allege cause for his default precluded federal habeas review of a defaulted claim). Nor is there any indication that a failure to review this claim will result in a fundamental miscarriage of justice. Consequently, Rosario-Torres is precluded from pursuing federal habeas corpus relief with regard to his claim regarding the trial court's denial of a motion for transcripts pertaining to oral arguments held by the trial court.

## H. Ground Ten

Rosario-Torres alleges that trial counsel was ineffective for advising him not to testify at trial. (Doc. 1, p. 26). The test for ineffective assistance of counsel is a well-settled and firmly established one containing two components. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a

trial whose result is reliable." *Id.*

Rosario-Torres' ineffective assistance of counsel claim was addressed in the context

of the PCRA proceedings. (Doc. 9-42). The Superior Court rejected Rosario-Torres'

ineffectiveness challenge and affirmed the PCRA court's opinion. *Commonwealth v.*

*Torres*, 2016 WL 2352826. The Superior Court found as follows:

> Torres argues that Attorney Weinstein rendered ineffective assistance, and
> interfered with Torres's right to testify in his own defense, by unreasonably
> advising Torres not to testify at trial. *Turner/Finley* Brief at 11; Pro Se Brief
> for Appellant at 18-19. Torres alleges that
>
> > [d]uring [pre-trial] preparations, he told [Attorney] Weinstein that
> > he wanted to testify. . . . In response, [Attorney] Weinstein told
> > him that his testimony was not necessary. . . . [ ] Torres
> > remained adamant in his desire to testify on his own behalf, but
> > [Attorney] Weinstein told him that he would only do damage to
> > the case if he did.
> > *Id.* at 18; *see also id.* (asserting that "Torres felt he had [no]
> > choice but to obey his lawyer's instructions"). Additionally,
> > Torres urges that, "[i]n light of the porous explanations
> > [Attorney] Weinstein offered [at the PCRA Hearing] for keeping
> > his client off the witness stand, it is much more probable that [ ]
> > Torres'[s] testimony concerning his attorney's advice was the
> > truth." *Id.* at 21.
>
> To prevail on a claim of ineffectiveness of counsel, the PCRA petitioner must
> demonstrate "(1) that the underlying claim is of arguable merit; (2) that
> counsel's course of conduct was without a reasonable basis designed to
> effectuate his client's interest; and (3) that he was prejudiced by counsel's
> ineffectiveness[.]" *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super.
> 2012) (citations omitted). The PCRA court may deny an ineffectiveness claim
> if the petitioner's evidence fails to meet any of these prongs. *Commonwealth*
> *v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010). Moreover, a PCRA
> petitioner bears the burden of demonstrating counsel's ineffectiveness. *Id.*;

47

*see also Commonwealth v. Lesko*, 15 A.3d 345, 380 (Pa. 2011) (stating that "[w]hen evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." (citation and internal quotation marks omitted)).

The decision to testify on one's own behalf

> is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for "failing to call the appellant to the stand," the appellant must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf.

*Commonwealth v. O'Bidos*, 849 A.2d 243, 250 (Pa. Super. 2004) (citation and brackets omitted). "Counsel is not ineffective where counsel's decision to not call the defendant was reasonable." *Commonwealth v. Breisch*, 719 A.2d 352, 354-55 (Pa .Super. 1998). Additionally, regarding the second prong of the ineffectiveness test,

> counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citations, quotation marks and brackets omitted).

In its Opinion, the PCRA court addressed Torres's ineffectiveness challenge as follows:

> [Torres] has failed to establish all three prongs of the [ineffectiveness] test[,] and his testimony at the . . . PCRA

48

Hearing [ ] lacked credibility.

First, Attorney Weinstein's testimony indicates his advice was both
reasonable and logical under the circumstances. During the PCRA Hearing,
Attorney Weinstein testified that [Torres], through an interpreter, informed
Attorney Weinstein that he shot the victim. PCRA Hr'g Tr. vol. 1, [at] 24. . . .
[Torres] then reneged, but finally admitted to the shooting[,] without [an] intent
to kill the victim. *Id.*, at 24-25. In addition, Attorney Weinstein testified as to
evidence involving the tracing of cellular telephones[,] which would have
contradicted [Torres's] testimony as to his location at the time of the incident.
*Id.*, at 25. Based on this information, Attorney Weinstein indicated his
reluctance to recommend [that Torres] testify on his own behalf to avoid
solicitation of perjury. *Id.*, at 24. Furthermore, Attorney Weinstein testified
that he wanted to separate [Torres] from his co-defendant [,Joseph Atwell],
felt that separation would be established by the evidence alone, and that
[Torres's] testimony would interfere with that distinction. *Id.*, at 26-28. Th[e
PCRA c]ourt is convinced [that] Attorney Weinstein's strong recommendation
that [Torres] not testify on his own behalf was a reasonable and logical trial
strategy.

Second, [Torres's] position that he was denied his right to testify on his own
behalf lacks credibility. [Torres] testified [at the PCRA Hearing that] he *did*
discuss the right to testify with Attorney Weinstein [ ]. PCRA Hr'g Tr. vol. 1,
5-8. . . . [Additionally, Torres executed an] Affidavit dated December 29,
2012, [which] indicates:

> [Attorney] Weinstein initiated a discussion with me, advising me
> that he did not need me to take the stand because now the
> case "looked good for us." . . . The defense rested without me
> taking the stand. It was on the basis of that advice that I used
> my right to remain silent and did not testify.

[ ]Torres Aff. December 29, 2012. This language is a clear indication that the
decision not to testify on his own behalf was made by [Torres,] based upon
the advice of Attorney Weinstein. Attorney Weinstein's testimony offered at
the PCRA Hearing verifies as much. PCRA Hr'g Tr. vol. 1, 22-23. . . .

Therefore, . . . Attorney Weinstein had both a logical and reasonable basis for

his recommendations to [Torres,] and th[e PCRA c]ourt is not convinced that the result of [Torres's] trial would have been different if [Torres] had testified on his own behalf.

PCRA Court Opinion, 6/1/15, at 6-7 (emphasis in original); *see also* Order, 3/9/15, at 2 (stating that Attorney Weinstein "is an extremely experienced defense attorney with 40 years of criminal [defense] experience, a great deal of knowledge of the law and the legal process, including how to actually handle jury trials, and [he has] a full understanding of his responsibility to both the client and the Court. Based upon all of that knowledge and experience, his advice to [Torres] was both logical and legal[,] and certainly qualified as effective assistance of counsel.").

Our independent review of the record shows that the PCRA court's sound rationale is supported by the record, and we therefor[e] affirm on this basis in rejecting Torres's ineffectiveness challenge regarding Attorney Weinstein. *See* PCRA Court Opinion, 6/1/15, at 6-7; *see also Spotz, supra.*

*Commonwealth v. Torres*, 2016 WL 2352826, at *3-5 (footnotes omitted).

It is clear that the state courts' adjudication of Rosario-Torres' ineffective assistance of counsel claim resulted in a decision that was based on a reasonable determination of the facts in light of the evidence presented at the PCRA hearing. Consequently, Rosario-Torres is not entitled to relief on this claim.

## V. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

## VI.   Conclusion

The Court will deny Rosario-Torres' application (Doc. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated:      November __1__, 2019

51